NATIONAL SMELTING CORPORATION, Appellant, v. PAUL C. CUTLER and Others, Respondents.

First Department, February 6, 1920.

Sales — action for breach of contract — trial — dismissal of complaint erroneous where plaintiff establishes prima facie case — repudiation of contract by seller for failure of purchaser to give guaranty demanded after execution of contract — pleading — amendment of complaint to conform to theory advanced on trial.

Where, in an action to recover for a breach of contract for the sale of goods, the plaintiff's evidence established a *prima facie* case of the making of the contract and its breach it was error for the court to dismiss the complaint at the close of the plaintiff's case.

When a valid and binding contract for the sale of goods has been made, neither party has a right to impose other conditions, and so the seller cannot lawfully repudiate the contract for the failure of the buyer to furnish a guaranty of payment at the request of the seller made subsequent to the execution of the contract.

Where the complaint in an action for a breach of contract is based on the theory of a joint contract on the part of the defendants, but that theory is abandoned on the trial, the plaintiff should take steps to have the complaint amended.

SMITH, J., dissents in part.

APPEAL by the plaintiff, National Smelting Corporation, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 15th day of March, 1919, upon a dismissal of the complaint by direction of the court at the close of the plaintiff's case.

*Preston M. Albro* of counsel [*Harry G. McKannay* with him on the brief; *Botsford, Lytle, Mitchell & Albro*, attorneys], for the appellant.

*A. S. Cutler* of counsel [*Benjamin F. Foster*, attorney], for the respondents.

DOWLING, J.:

This action is brought to recover damages for the breach of a contract claimed to have been entered into between plaintiff and the defendants, the firm of Cutler Brothers and a corporation, the Superior Metal Company, on or about April 9, 1918, at the city of New York, whereby the defendants were to sell and deliver to the plaintiff, within a reasonable time, twenty-five long tons (2,240 pounds each) Chinese No. 1 tin, minimum ninety-nine per cent pure, at eighty-two cents per pound C. I. F., Pacific coast; and that prior to the time of delivery, defendants gave notice to plaintiff that they would not fulfill their agreement but would repudiate it, whereupon plaintiff was obliged to buy the tin in the open market and pay therefor the sum of ninety-one cents per pound, that at the time being the lowest market price, all to the plaintiff's damage in the sum of $5,040.

After the jury had been impaneled and sworn, the plaintiff moved to discontinue as to the Superior Metal Company and stated that the attorney for the company had consented to the discontinuance without costs. The attorney for Cutler Brothers called the attention of the court to the fact that the complaint alleged a joint contract made by both defendants, the firm and the corporation, and that discontinuance against the corporation automatically disposed of the joint contract. The court granted the motion to discontinue as to the Superior Metal Company and no exception was taken thereto by the attorney for the defendant Cutler Brothers.

The contract in question is sought to be established by telegrams and letters which passed between the parties, beginning with the telegraphic offer made by the Superior Metal Company to Emar Goldberg at San Francisco, Cal., on April 6, 1918, advising him that a firm bid would probably secure " twenty-five Chinese " on steamship *Canada,* reported to have sailed on March twenty-sixth from the far east, at eighty-two cents per pound on the Pacific coast. Goldberg replied that his party thought that the price was high but would accept confirmation at eighty-two and asked the metal company to try to secure a price of eighty-one and wire confirmation to National Smelting Company, 554 Brannon street, San Francisco, Cal., who, he said, were " O. K." This was on April 8, 1918. On the same day the metal company telegraphed to the plaintiff, confirming the purchase for it of " twenty-five Chinese Tin " as per telegram of April sixth, at eighty-two cents, sellers Cutler Brothers, and said as plaintiff's name was unknown in New York they were requested to telegraph references immediately. This the plaintiff did on the same day, referring to the First National Bank of San Francisco. The sending of this telegram was confirmed in writing by a letter dated April 8, 1918. On the same day the metal company telegraphed the plaintiff asking it to have its bank telegraph it immediately, guaranteeing payment on presentation documents on arrival of the tin at the Pacific coast, as plaintiff had no rating, and Cutler Brothers were becoming impatient as they could sell the tin in New York at eighty-six cents. In the meantime, and also on the same day, plaintiff had written a letter to the metal company confirming its

First Department, February, 1920.        [Vol. 190.

telegram, advising the metal company of its bank references and further confirming the purchase of the tin. On April ninth plaintiff answered the metal company's telegram requesting a bank guaranty of payment, by sending a telegram saying that they were prepared to take care of the draft on the arrival of the material. Goldberg also telegraphed on the ninth saying that the plaintiff would hold Cutler to the contract if the tin was undelivered, as it had been resold to the largest corporation in San Francisco and that as president of the Mars Metal Company he (Goldberg) did not hesitate to guarantee the account.

Thereupon, on April ninth, the metal company telegraphed the plaintiff, " Tin sale with Cutler adjusted. Everything O. K. Sending contracts to-night." Such contracts were in fact prepared by the company, bearing date April eighth and were forwarded to plaintiff, who duly accepted them in writing; but they were never signed by Cutler Brothers. The metal company on April eighth had written a letter recapitulating the telegraphic correspondence and expressing the hope that bank references would be sent. On April twelfth Cutler Brothers telegraphed the First National Bank of San Francisco as follows: " Will you guarantee to pay our draft for twenty five tons Chinese tin sold National Smelting Company San Francisco contract dated April eighth eighty-two cents per pound steamship Canada when we present documents wire answer and confirm by letter." On the same day (April twelfth) Cutler Brothers wrote to the metal company quoting this telegram and saying that unless they received an answer to it from the bank on that same day they would not sign the contract prepared by the metal company, but would return it and consider it canceled. The bank did in fact reply on April thirteenth, saying that the order was accepted and payment was to be made by sight draft with documents attached, and that a guarantee was unnecessary.

On April seventeenth the First National Bank sent a telegram to Cutler Brothers advising them that the bank had opened a credit in their favor for $50,000 for the account of plaintiff to cover drafts as shown by bills of lading attached, calling for the tin in question and that the credit would be held open for thirty days. On April eighteenth Cutler

Brothers telegraphed to the bank that they could not accept the guaranty at that time and that same should have been received at the time requested. In the meantime, on April sixteenth, plaintiff had telegraphed to the metal company that the bank guaranty was no part of the contract, but to avoid trouble it had asked the bank to guarantee the payment.

The telegram from the metal company to the plaintiff on April ninth stating that the defendant's sale with Cutler Brothers was adjusted, that everything was " O. K." and that the contracts were being sent on that same night, was sent, as Mr. Rich testifies, after the telegrams theretofore passing between the parties had been read to Samuel Cutler, one of the defendants, a member of the firm of Cutler Brothers, who had charge of this transaction for his firm; and the telegram was sent as a result of Samuel Cutler's statement to Rich. Rich said, " Is that O. K., is everything all right and shall I send on the contract?" To which Cutler replied, "All right."

In our opinion, this series of telegrams, ending with the one sent by the metal company to Cutler on April ninth, constituted a valid contract between the parties, if the jury accepted Rich's testimony as true. Plaintiff, therefore, had made out a *prima facie* case, which called for the submission of the issue to the jury and made it error to dismiss its complaint. No claim is made that there was any uncertainty or ambiguity as to the character and quality of the goods intended to be sold. It seems to be conceded that Chinese tin as discussed between the parties in their telegrams was understood to refer to No. 1 Chinese tin, minimum ninety-nine per cent pure. There seems to have been no doubt that both parties understood that delivery was to be on the Pacific coast and that the goods when sold were still in course of transportation on the steamship *Canada.*

All the necessary elements of a valid contract appear to have been understood to be present by both parties and there is no suggestion that any important element was forgotten or left to future agreement. Defendant Cutler Brothers never seems to have claimed that the written contract drawn by Rich for the metal company as broker did not contain all the elements of the contract as agreed upon by the parties in

First Department, February, 1920.    [Vol. 190.

conformity with the telegrams, and the refusal to carry out the contract by Cutler Brothers was due solely to the failure to furnish them with a bank guaranty. The plaintiff furnished a bank reference as requested and the sufficiency of that reference is not questioned. When a valid and binding contract had been made between the parties, neither had the right to impose other conditions. The additional condition for a guaranty (and not a reference) was made by the defendants, apparently in the hope that it might furnish a pretext to break the contract, as they desired to obtain a higher price for the tin, since the market was a rising one. They insisted on an immediate reply, and though they received as ample an assurance of payment as a bank could give, they claimed it came too late, though received within twenty-four hours after their demand, and though plaintiff was under no obligation to do anything further, but yielded in its desire to receive the tin it had bought in good faith.

The documentary evidence in the case, together with the testimony of Rich, if credited, was sufficient to carry this case to the jury. It may be noted that all the telegrams and letters refer to the purchase or sale made between Cutler Brothers to the plaintiff and even in the Cutlers' letter of April twelfth to the metal company, setting forth a copy of their telegram to the San Francisco bank asking for the guaranty, they ask for such a guaranty to pay for the draft, " for twenty-five tons Chinese tin sold National Smelting Company San Francisco contract dated April eighth."

As these conclusions call for a new trial, it is advisable to call attention to the state of the pleadings, which should be amended before such trial is had. The plaintiff's complaint is based upon the theory of a joint sale by Cutler Brothers and the Superior Metal Company. That claim is now abandoned and it is contended that the sale was made by Cutler Brothers to the plaintiff and that the Superior Metal Company represented by Rich was simply a broker in the transaction. The theory upon which the action was tried is inconsistent with the allegations and theory of the complaint. The plaintiff should take appropriate steps to have the complaint amended to conform with its present contention.

The judgment and order appealed from will be reversed

and a new trial ordered, with costs to the appellant to abide the event.

CLARKE, P. J., PAGE and PHILBIN, JJ., concur; SMITH, J., concurs in result, holding that it is not necessary to amend the complaint.

Judgment and order reversed and new trial ordered, with costs to appellant to abide event.